UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GARDNER TAYLOR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1745** |
| **WARDEN JEFFERY TRAVIS** | **SECTION "J"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, it is recommended that the instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.  STATE COURT PROCEDURAL BACKGROUND

The petitioner, Gardner Taylor, is incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On January 6, 2004, Taylor was charged by bill of information in Jefferson Parish with possession with intent to distribute marijuana within 1000 feet of Gretna No. 2 Elementary School.[3] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> Officer Timothy Carman of the Gretna Police Department testified at trial that on the afternoon of December 1, 2003, he was dispatched to the 700 block of Governor Hall Street on a criminal complaint. The officer was dressed in uniform and was driving a marked police car. When he approached the said location, Officer Carman saw defendant sitting on the open tailgate of a gray truck, eating crabs.
> Carman testified that, based on the complaint he received, he approached defendant on foot and introduced himself. Defendant appeared extremely nervous. He was fidgety and avoided eye contact with the officer. Carman asked defendant if he was from that neighborhood, and defendant said he was not. Moreover, defendant could not give Carman the name or address of anyone he was visiting in the area. The officer asked defendant for his identification, and defendant gave it to him. Carman then ran defendant's personal information on the police computer to determine whether defendant had any outstanding warrants.
> Carman testified that defendant continued to display nervous behavior, and the officer began to fear for his own safety. He asked defendant to put his hands on the truck's tailgate so he could conduct a patdown search of defendant's outer clothing for weapons. Defendant then reached for his left pants pocket. Fearing defendant was reaching for a weapon, the officer grabbed his hand and handcuffed him. Carman conducted a patdown search and felt a large lump in defendant's left pants pocket. To the trained officer, the lump felt like several small packages of a controlled dangerous substance.
> Carman testified that he pulled out of defendant's pocket seven small plastic bags containing a green/brown vegetable substance which he believed was marijuana. On the outside of the bags was a Starship Enterprise logo, as seen on the television series Star Trek. Carman told defendant he was under arrest, and advised him of his Miranda rights. The officer then conducted a search of defendant's person incident to arrest.
> After learning from the police computer that the truck was registered to defendant, Carman asked him if he would consent to a vehicle search. Defendant replied, "I ain't got nothing but peanuts and candy apples in there." The officer asked again whether he could search the truck, and defendant said, "Yeah, you can search it."
> Sergeant Jim Price testified he arrived at the scene after defendant was placed in handcuffs. Officer Carman told Price he had obtained defendant's consent to search the

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 1/6/04.

2

truck. Price then searched the passenger area of the vehicle and retrieved from the back seat two plastic popcorn bags and a plastic peanut bag which held a total of 29 smaller plastic bags containing what he believed to be marijuana. Price gave the evidence to Carman, who was responsible for transporting it to the police department. Price identified State's Exhibit 2 as three plastic bags of marijuana, bearing the Starship Enterprise Logo, that he recovered from the truck. He identified State's Exhibit 3 as a peanut bag that contained the three bags in State's Exhibit 2. State's Exhibit 4 was a group of 11 bags of marijuana Price found in the truck. State's Exhibit 5 was a popcorn bag that held the 11 smaller bags in Exhibit 4. State's Exhibit 6 was a group of 15 plastic bags of marijuana. State's Exhibit 7 was a popcorn bag that held the 15 bags in State's Exhibit 6.

Officer Carman testified that Gretna No. 2 Elementary School is located in the 700 block of Amelia Street. The officer said one can clearly see the school grounds from where defendant was standing. Carman measured the distance between where defendant was to the nearest part of the school grounds. He used a "measure master," a wheeled instrument that counts distance as it is rolled along the ground. The distance measured 394 feet.

Daniel Waguespack of the Jefferson Parish Crime Lab, was accepted by the trial court as an expert in the field of forensic science. Waguespack testified that he examined and tested representative samples of the vegetative material from State's Exhibits 1, 2, 4, and 6. All of the samples tested positive for marijuana. Waguespack included his findings in a lab report. He testified that the net weight of the marijuana in State's Exhibits 1, 2, 4, and 6 was 57.6 grams.

The State introduced the testimony of Lieutenant Bruce Harrison, whom the trial court accepted as an expert in the packaging, distribution, and value of controlled dangerous substances. Harrison testified he was not involved in the investigation of the instant offense, but he had reviewed the police incident report.

According to Harrison, the three most important factors in distinguishing between simple possession and possession with intent to distribute narcotics are quantity, packaging, and value. In his opinion, the quantity, packaging, and value of the marijuana seized in this case were consistent with distribution rather than simple possession.

Harrison first explained that, as is true in any trade, it is more expensive to buy marijuana in small quantities than to buy it in large amounts. Harrison noted that the 56 grams of marijuana in this case was packaged in a total of 36 bags. To buy those individual bags for personal use would cost about $230, whereas 56 grams of marijuana that is not broken down into smaller quantities would cost about $140-160. If a user bought such a large quantity of marijuana that was not broken down, he would not typically divide it into smaller bags, as was done here. He would simply take some out of the large package as he used it.

Harrison noted that all of the small bags of marijuana bore the same Starship Enterprise logo. He said the bags all likely came from the same source, explaining that a distinctive logo is a way in which a dealer identifies his product.

Harrison felt the quantity of marijuana in this case was too large to indicate personal use. To use even five to ten grams of marijuana in a day, a user would have to smoke a cigarette every waking hour. Moreover, if someone had marijuana for his own use, Harrison would expect to see user paraphernalia, such as cigarette rolling papers. No such paraphernalia was recovered in this case.

Harrison further testified to the fact that defendant did not have a large amount of money when he was arrested was not necessarily an indication that he was not selling marijuana. Sometimes a seller will have a lot of money on his person when he is apprehended, but it is more common for a seller not to carry much money. In defendant's

case, his money might have been at his house, or he might have just started selling when Detective Carman stopped him.

Isaac Williams was the only witness for the defense. He testified that on December 1, 2003, he was living at 721 Governor Hall Street, Apartment 1. Williams knows defendant, who grew up in Gretna. He saw defendant pull up in front of his residence at about 1:00 p.m. Defendant sat on the back of his truck eating seafood for 15-20 minutes before police arrived. During that time Williams did not see anyone approach defendant. Williams testified that he chose not to get involved in the incident when police arrived.

State v. Taylor, 966 So.2d 631, 634-36 (La. App. 5th Cir. 2007); State Record Volume 5 of 6, Louisiana Fifth Circuit Opinion, 06-KA-558, pp. 3-7, July 30, 2007.

Taylor was tried before a jury on August 11, 2004, and was found guilty as charged.[4] At a hearing held on September 10, 2004, the state trial court denied Taylor's motion for a new trial and, after waiver of delays, sentenced Taylor to serve seven years in prison at hard labor.[5] The State also filed a multiple bill against Taylor that same day.[6] On April 29, 2005, Taylor stipulated to the allegations in the multiple bill and was resentenced as a multiple offender to serve 12 years without benefit of probation or suspension of sentence.[7]

On direct appeal, Taylor's appointed counsel argued that the state trial court erred in denying the motion to suppress the evidence after an unlawful stop and in denying the defense's Batson[8]

---

[4] St. Rec. Vol. 1 of 6, Trial Minutes, 8/11/04; Jury Verdict, 8/11/04; Trial Transcript, 8/11/04; St. Rec. Vol. 2 of 6, Trial Transcript, 8/11/04; St. Rec. Vol. 3 of 6, Voir Dire Transcript, 8/11/04; St. Rec. Vol. 4 of 6, Voir Dire Transcript (continued), 8/11/04.

[5] St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/10/04; Motion for New Trial, 8/13/04; St. Rec. Vol. 2 of 6, Sentencing Hearing Transcript; 9/10/04.

[6] St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/10/04; Multiple Bill, 9/10/04.

[7] St. Rec. Vol. 1 of 6, Sentencing Minutes, 4/29/05; St. Rec. Vol. 2 of 6, Multiple Bill Hearing Transcript, 4/29/05.

[8] Batson v. Kentucky, 476 U.S. 79 (1986). The Supreme Court's opinion in Batson addresses the discriminatory use of peremptory challenges during voir dire and, when a prima facie showing is made, requires the prosecution to provide race neutral reasons for using its peremptory challenges.

challenges during voir dire.[9] The Louisiana Fifth Circuit affirmed Taylor's conviction and sentence on July 30, 2007, finding no merit to either claim.[10]

Taylor raised the same issues in his subsequent writ application to the Louisiana Supreme Court, which was denied without reasons on February 1, 2008.[11] His conviction became final 90 days later, on May 1, 2008, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

II. FEDERAL HABEAS PETITION

On May 8, 2008, the clerk of court filed Taylor's petition for federal habeas corpus relief in which he raised two grounds for relief:[12] (1) the state trial court erred in denying the motion to suppress the evidence after an unlawful stop; and (2) the state trial court erred in denying the defense's Batson challenges during voir dire. The State filed a response in opposition to the petition arguing that Taylor's claims were without merit.[13]

Thereafter, counsel enrolled on behalf of Taylor and later filed an amended petition raising one additional claim, that the state trial court erred under the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), in allowing Bruce Harrison to testify as

---

[9]St. Rec. Vol. 2 of 6, Appeal Brief, 2006-KA-0558, 3/5/07.

[10]State v. Taylor, 966 So.2d at 631; St. Rec. Vol. 5 of 6, 5th Cir. Opinion, 06-KA-558, 7/30/07.

[11]State v. Taylor, 976 So.2d 717 (La. 2008); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2007-KO-1902, 2/1/08; La. S. Ct. Writ Application, 07-KO-1902, 9/27/07 (postal metered 8/29/07); St. Rec. Vol. 5 of 5, La. S. Ct. Letter, 2007-KO-1902, 9/27/07 (postal meter 8/29/07).

[12]Rec. Doc. No. 3, p. 4.

[13]Rec. Doc. No. 10.

5

an expert.[14] Counsel also requested that, if the court determined that Taylor has not exhausted state court remedies, that this matter be stayed rather than dismissed.[15]

The State filed a response in opposition to the amended petition reiterating its opposition to the original claims and raising the defense of failure to exhaust as to the Daubert claim.[16] The State also opposed the granting of a stay because Taylor failed to show his entitlement in this case.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[17] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Taylor's petition, which, for reasons discussed below, is deemed filed in this federal court on February 14, 2008.[18]

---

[14]Rec. Doc. No. 15; see also, Rec. Doc. No. 9, 11-14.

[15]Id., at p.9.

[16]Rec. Doc. No. 16.

[17]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[18]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Although counsel later enrolled, Taylor filed the original petition pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Taylor's petition was filed by the clerk of court on May 8, 2008, when the filing fee was paid. Taylor dated his signature on the petition on February 14, 2008, which is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State alleges that Taylor has failed to exhaust state court remedies with respect to the Daubert claim, which was raised in the amended petition.[19] The Court will address this defense.

## IV. EXHAUSTION REQUIREMENT

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." (emphasis added) Id., 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

---

[19] Rec. Doc. No. 16.

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court. Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim). Thus, to have exhausted his claims in state court, Taylor must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through the Louisiana Supreme Court.

The record shows, and the State concedes, that Taylor has allowed the state courts one full round of review on the two claims raised in the original petition. However, Taylor's newest claim, the Daubert claim, has not been previously raised in the state courts, including the state's highest court. As outlined above in detail, this claim was not among those raised in Taylor's post-appeal writ application to the Louisiana Supreme Court.[20]

Taylor, therefore, has failed to exhaust available state court remedies as to the Daubert claim. See Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420). Ordinarily, a mixed petition such as this would be dismissed to allow the petition to exhaust state court remedies. Pliler, 543 U.S. at 233. In this case, Taylor requests that the Court consider staying this matter rather than dismissal.

---

[20] In his only post-appeal writ application to the Louisiana Supreme Court, Taylor argued that the state trial court erred in denying the motion to suppress and in denying the Batson challenges. La. S. Ct. Writ Application, 07-KO-1902, 9/27/07 (postal metered 8/29/07).

8

In Pliler v. Ford, 542 U.S. 225, 231 (2004), the United States Supreme Court addressed the availability of a stay-and-abeyance in connection with "mixed petitions" containing both exhausted and unexhausted claims. The Supreme Court recognized that, ordinarily, a petitioner had two choices when faced with dismissal for failure to exhaust: (1) return to the state courts to exhaust his claims in full; or (2) amend or resubmit his petition to raise only exhausted claims in the federal district court. Id. The Supreme Court later held that stay-and-abeyance was an extraordinary remedy not to be made readily available to a habeas petition. Rhines v. Weber, 544 U.S. 269, 278 (2005).

The Rhines Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust. Id., at 277. Stays are also improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay." Id.

In this case, Taylor has indicated no good cause for the failure to exhaust, and the Court can find none in the record. Rhines, 544 U.S. at 278. Taylor chose to file this federal petition days after the resolution of his post-appeal Louisiana Supreme Court writ application and without filing for collateral post-conviction relief in the state courts on any other available claims. Even now, neither Taylor nor his retained counsel have indicated any effort to bring the Daubert claim to the state courts in spite of urging it here, in the dilatorily-filed amended complaint.[21] The record, therefore, displays no good cause and instead shows unexplained delay in pursuing his claims. Notably, these

---

[21]After enrolling on August 6, 2008, counsel took no action to file an amended complaint until this Court ordered them to do so. Rec. Doc. No. 12. After receiving an extension of time, counsel filed the amended complaint on December 16, 2008, which was over four months after they enrolled for that purpose.

delays, however, have not expended his opportunity under state law to timely pursue the claims in a state application for post-conviction review, which if done properly and diligently, would also toll the remaining time he has to file another timely federal petition.

Furthermore, Taylor's Daubert claim may be "plainly meritless" as presented. The Court notes that "[a] state court's evidentiary rulings present cognizable habeas corpus claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." Johnson v. Puckett, 176 F.3d 809, 820 (5th Cir. 1999) (citation omitted); Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). The Daubert opinion does not set forth "a constitutional floor" for the admissibility of scientific evidence. Milone v. Camp, 22 F.3d 693, 702 (7th Cir. 1994); Castillo v. Johnson, 141 F.3d 218, 221 (5th Cir. 1998) (recognizing that Daubert did not address admissibility of polygraph evidence in the context of federal constitutional law). As such, Daubert's gate-keeping provisions do not alone serve as a basis for the granting of habeas relief. See Keller v. Larkins, 251 F.3d 408, 419 (3rd Cir. 2001). Thus, upon initial review, Taylor likely would not be entitled to relief on such a claim.

Thus, based on the record before the Court, a stay in this case would be improper under the guidelines set forth in Pliler and Rhines. Taylor has failed to show "good cause" for his failure to exhaust, or explain the "delay" in bringing this claim without first exhausting, or establish that his Daubert claim as presented is "not plainly meritless" under the laws applicable to federal habeas corpus petitions. See Rhines. Therefore, this mixed petition, presenting both exhausted and unexhausted claims, is subject to dismissal without prejudice to require Taylor to exhaust available state court remedies. Pliler, 542 U.S. at 233 (quoting Rose, 455 U.S. at 510); Whitehead, 157 F.3d at 387.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Gardner Taylor for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 18th day of March, 2009.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE